# SUPERIOR COURT.

## Francisco E. Hernandez, an infant, by Francisco de Armas, his guardian, agt. Cristoval Carnobeli.

*Quere?* Whether the decision of the court of appeals in *Valarino* agt. *Thompson*, (3 *Selden*, 582,) where it is held that the United States court acquires jurisdiction of a party, not otherwise amenable to it, when sued upon *joint contract*, with a *foreign consul* residing here, must not also apply between such parties in actions for *tort?*

A defendant cannot be *twice arrested* by process out of different courts in the same state, for the same cause of action—even under a plea of necessity of bringing a joint action in one case in the district court of the United States, as the only way of obtaining jurisdiction over his co-defendant.

*It seems,* that proof of arrest upon process issued out of one court, is sufficient ground to discharge the defendant from the second arrest upon process issued out of the other court. The only question there may be about it is, whether the plaintiff is not entitled to an *election?* Perhaps the better practice is, to reduce the bail in one case to a mere nominal amount, similar to the discharge on common bail under the former system.

The Code, now, permits the *partial trial* of a cause upon a motion to discharge an arrest. (§§ 204, 205; *see also Corwin* agt. *Freeland,* 2 *Selden,* 565.) The principle upon which the court is to act in such cases is, that the inquiry is to be, whether, upon the whole case as presented, a verdict ought to be given by a jury, or a judgment by a single judge, for the plaintiff or defendant? If the questions are *doubtful,* then the plaintiff has *not* made out his case, and the defendant should be *discharged.* The principle is similar to the doctrine of a court of equity upon a motion to dissolve an injunction, or discharge a *ne exeat.*

In this case, *held,* that the extent to which the case could be carried by the plaintiff was, that his father was induced, by the promise of the Cuban authorities to liberate him, [the father,] or threat to continue his imprisonment, to direct his son to return; and for that purpose commissioned the defendant to bring him from the United States. The fact of a full and entire authority, in form and language, given by the father to accomplish this purpose, could not, from the evidence, be denied. The defendant, then standing in the place of the father, used the very means which the latter directed, of *haste* and *concealment*—without undue force or personal violence—to accomplish his purpose. Under such evidence, the defendant was not liable to an action for assault and battery and false imprisonment—consequently was discharged from arrest.

Hernandez, &c., agt. Carnobeli.

*Special Term, February*, 1855.

THIS was a motion to discharge the defendant from imprisonment under an order of arrest, or to mitigate the bail.    The affidavit of the plaintiff, *Francisco Elias Hernandez*, sworn to the 9th Feb., 1855, upon which the order of arrest was founded, is substantially as follows:—That he is aged sixteen years and upwards; that he is the god-son and ward of his uncle, Jose Elias Hernandez, who resides at No. 91 President-street, Brooklyn; and that he has been educated in this country, at his said uncle's expense; that he was placed by his uncle, in November last, at a school kept in Claverack, near Hudson, N. Y., by one Mr. Ira C. Boice, and one Mr. Gardiner, and Mr. Bannister.

That on or about the 1st Feb., instant, while deponent was in school, he was sent for, to come to the office—this was in the afternoon—he went there and found two persons; one was Mr. Cristoval Carnobeli, whom deponent had seen in Cuba, and with him the Spanish consul, Mr. Francis Stoughton; that the said Carnobeli then told deponent that he had a letter from his father, who resides in Cuba, directing deponent to return to Cuba; to which deponent replied, that he would not go then. Mr. Carnobeli and Mr. Stoughton then both told me that I must go; and if I did not go, I would be put in prison and very badly treated.

I told them that I must write to my uncle, the above named Jose Elias Hernandez, first.    They said I should not do any such thing.    I said I would not go with them unless I could first see my uncle.    They replied that I should not.    Then I said that I would not go at all.    Then they said, that if I came with them to New-York, they would let me see my uncle. And deponent says, that their manner was threatening in this conversation.    I told the principal, Mr. Gardiner, that he was responsible for me to my uncle.    He did not say anything.

Carnobeli and Stoughton were in a great hurry, and insisted that I should go off with them at once.

And deponent further saith, that in the year 1853, when about fourteen years of age, he was arrested and thrown into

prison in the island of Cuba as suspected of being hostile to the government; that the deponent was confined in prison at Baracoa, and was there altogether several months; that deponent was terrified at the idea of being imprisoned again in Cuba, and by the menacing style of the conversation of Carnobeli and Stoughton—which was sometimes carried on in Spanish and sometimes in English; and felt compelled to come to New-York, as required by them, against his will and wish.

During the great part of the conversation, Mr. Gardiner, the principal, was present.

Deponent came to New-York the same afternoon, under fear of personal constraint and violence, with the said Stoughton and Carnobeli, by railroad; and was taken by Carnobeli to the boarding-house, No. 154 Chambers-street, that night.

Deponent, immediately on his arrival, asked to be allowed to see his uncle; but Mr. Carnobeli told me, I should not see my uncle. He offered me money, but I refused it. He would not let me see my uncle.

I was put to sleep, that night, in the same room with Mr. Carnobeli.

The next morning I again desired to see my uncle. He refused to let me see him. Carnobeli took me with him to the store of Mr. Ceballos, in Broad-street; from there to Mr. Stoughton's; and Mr. Stoughton gave the passport to Mr. Carnobeli.

I then went back to the boarding-house in Chambers-street. At about half-past one o'clock, the said Carnobeli took the deponent on board the steamer Empire City, that was going to Cuba that day, and that was then lying in the North River; and was proceeding to compel him, against his will, to go to Cuba, when he was liberated by the interference of his uncle, and his friends, and taken home by his uncle.

And deponent saith that he has been unlawfully restrained of his liberty by the said Francis Stoughton and Cristoval Carnobeli, and falsely imprisoned by them; that his only desire is, and always has been, to remain in the United States with his uncle and guardian, the said Jose Elias Hernandez.

And this deponent further saith, that said Francis Stoughton is the Spanish consul in the city of New-York.

Mr. Carnobeli, in the conversation at Claverack, spoke altogether in Spanish—Mr. Stoughton sometimes in English and sometimes in Spanish.

And this deponent further saith, that during the conversation at Claverack, the said Carnobeli said that the captain general of Cuba would take charge of his education; to which deponent replied, that his uncle took care of him. and that was quite enough.

And the deponent further saith, that during the said conversation the said Carnobeli said, in the presence of the said Stoughton, that the said Stoughton would not have come up to Claverack about the said matter, but that he [Stoughton] had received an order from the captain general of Cuba directing him to do so, or words to that effect.

The affidavit of *Jose Elias Hernandez*, stated that he is a naturalized citizen of the United States, and is the uncle and god-father of Francisco E. Hernandez; that he has read the affidavit of the said Francisco E. Hernandez, [annexed,] and that the same is true, as to all the matters therein stated which in any way affect or regard this deponent.

And further saith, that the said Cristoval Carnobeli is a transient person, as deponent is informed and believes, and intends to sail for Cuba on the 9th of February, instant.

And further saith, that the deponent is well acquainted with the relations of the said Francisco E. Hernandez, and of his father, the brother of said deponent, with the government of the island of Cuba; and that he has no doubt whatever that the agency and interference of the Spanish consul in this matter has been owing entirely and directly to the orders of the Spanish government; and that, had it not been for such orders, he would not have appeared in said matter in any way. There has never been the slightest acquaintance between the said Francis Stoughton and this deponent's said brother. And that his said nephew and god-son was sent to this deponent by his father, in the fall of the year 1854, to be educated in this coun-

try; and that deponent has since had the boy educated here at his own expense; that, in deponent's opinion, it is absolutely impossible that his brother, Francis E. Hernandez, ever gave, with his own consent, any order for his son to return to Cuba; and that if any such order was given, it must have been obtained by the undue and tyrannical interference of the Spanish government of Cuba with his said brother, either for the purpose of re-imprisoning this deponent's nephew, or, by obtaining possession of his person, to exercise greater control over his parents, or some other oppression or arbitrary purpose.

On the part of the defendants, it appeared by the affidavit of *Francis Stoughton*, consul of Spain for the port of New-York, that on the 29th of January last, (1855,) the defendant, Cristoval Carnobeli, came to the Spanish consulate in New-York city, and delivered to deponent a sealed document, directed in Spanish, which, in English, would be thus: "*For the Spanish Consul of the United States at New-York—favored by Cristoval Carnobeli.*" That the enclosure was a letter in Spanish; that such letter, and the said direction, were in the hand-writing of Francis Hernandez, of Baracoa, island of Cuba, the father of the plaintiff in this action; and the following is a correct translation of the whole of such letter:—

"*To the Spanish Consul in New-York.* Although his Excellency, the Captain General, was pleased to offer me a recommendation to your Excellency in my affair, I take the liberty to write to you confidently, because of the good reports I have of your Excellency. I beg you will excuse the liberty I take. I write in haste, on account of the desire which, as a father, I have of seeing a beloved child. I have a son about fifteen years of age in your city, called Francisco E. Hernandez, who went there at the request of an uncle, to be educated by him; but, in consequence of this, I had been imprisoned seven months; and, as at present I, as well as my family, are suffering a second time, I found no other means, but to request his Excellency, the Captain General, to permit my son's return, which he has granted, as also the permission to send the bearer of the present communication, under the protection of your

Excellency, to seek the boy—for he knows him personally—and bring him back, as I need him on many accounts. My son wrote to his mother from a place called Claverack, under date of the 28th of November last, saying that he was in a college thirty-six leagues from New-York. He also directs that his letters be addressed to Brooklyn, President-street, No. 91, his uncle's house. But, as I presume that his uncle will oppose his return to the Island, I request your Excellency to do the best for the boy to return without the knowledge of his uncle, or that of his family—as they will hide him away. I believe that your Excellency has a control over the boy, because he is a Spaniard, has left the Island as such, and is under age. And I give to your Excellency my authority as a father. I again repeat my request; and although I am the father of a poor family, I am ready to make any sacrifice to recover my son, as it is the only way to my living happy, and be free of troubles and sorrows, which bear me down. I pray to the Almighty to preserve your life and health, and also that of your family; and I remain yours, &c. [Signed] FRANCISCO HERNANDEZ."

"P. S. Should my son require anything for his voyage, I should feel grateful if you would advance him any sum, which I will pay here to your order. Yours, &c."

Also deponent saith, that on account of receiving said letter of the 23d of January, 1855, and as the steamer for Cuba was to leave four days afterwards, this deponent went, on the 1st day of February, instant, in rail car, to Claverack (near Hudson) with the said Cristoval Carnobeli, who could speak no English, and had never been before in America. That they got to the institute, or school, (where the said plaintiff was,) about 3 o'clock, P. M., of that day; saw one of the principals, a Mr. Gardiner, and deponent asked him to send for the boy, which was done. Immediately he came in, he recognized Carnobeli, and they talked together some time (probably twenty minutes) at a distance from deponent, out of his hearing—during which time the deponent was conversing with Mr. Gardiner. The deponent went with Mr. Gardiner towards the lad Hernandez—this deponent taking with him the above letter

Hernandez, &c., agt. Carnobeli.

from the father; (up to this time the deponent had not spoken to the lad;) and then, handing the letter to him, asked him whether the aforesaid letter, with its signature, was in his father's handwriting. The lad recognized it; and deponent requested him to translate the letter to Mr. Gardiner, which he did. Deponent then introduced himself to Mr. Gardiner and to the lad as the Spanish consul, and at the same time asked the lad whether he would like to go to Cuba? To which he immediately replied in English, "I guess I would." Mr. Gardiner asked if the deponent wanted the lad to return with him; deponent replied in the affirmative; thereupon Mr. Gardiner told him to go and pack up his trunk; and the lad went out for such purpose. A short time afterwards, the lad returned; and another of the principals, being acquainted with the lad's proposed departure, the deponent saw the former deliver to the lad a check, which the principal before mentioned said was to pay back an advance just made to the academy for the lad. Then this deponent was shown over the establishment by one of the principals, or professors; and about a quarter or ten minutes to five o'clock, the deponent left, and went to the cars with Carnobeli, leaving the lad to follow afterwards, (he being engaged in packing his trunk,) which the lad did. Deponent then got into a car with Carnobeli and the lad; and, before taking seats, and standing up, here it was that the first conversation (save the few words aforesaid) took place between deponent and the lad, which was introduced by Carnobeli saying the lad wished to see his uncle on business, to which deponent told the lad it would not do, as his uncle would prevent his going home to his father.

The deponent then took a seat alone, apart from Carnobeli and the lad; and he had no futher conversation. On arriving at Hudson, the deponent, Carnobeli, and the lad proceeded to an eating house, to take some refreshment before going to the cars at Hudson. No conversation occurred with the deponent and the lad at that eating house. The deponent, Carnobeli, and the lad then went to the cars. The deponent sat alone therein. Carnobeli and the lad occupied seats together, at a

distance from deponent—the latter never speaking to the lad; and on arriving at New-York, deponent at once left the lad in company with Carnobeli, and went home alone; and the next morning the said lad came to the consulate with Carnobeli and got a passport; and the lad, while this was preparing, wrote a letter to his uncle, returning him the check delivered to the lad at the academy.   And deponent thereafter parted from the lad, and bid him good·bye, and used some kindly expression, but deponent does not remember the words; but they were only what deponent, as an elderly man, would have kindly used to any boy under similar circumstances.   And deponent says that he has not seen the lad since.   He did not go to the vessel in which the lad was to embark, but was engaged with his own business at the consulate at the time; and he has detailed all that has occurred from first to last in relation to him, so far as this deponent is concerned; and he says that his action and conduct in·regard to this matter were of a friendly and kindly nature; and what he did was with a view to carry out the father's wishes, as expressed in his letter.   And this deponent, otherwise, was wholly indifferent as to whether the said lad went to Cuba or not.

And he solemnly swears, that if the lad had said he would not go to Cuba, or Havana, the deponent would have left the lad forthwith; and deponent says, that from all he knows, has read, or been informed, he believes that the said Carnobeli was employed, from first to last, in the above matter, at the un-biassed and uninfluenced desire of the parents of the said lad; and what he has done in this matter has been to oblige them.

And deponent denies that he ever told the said lad (plaintiff herein) that he must go to Cuba; and that if he did not go he would be put in prison, and very badly treated, nor anything to that· effect; nor did he ever hear the said Carnobeli say so; nor did he ever tell, or say to the said plaintiff, that he should never do any such thing as write to his uncle; nor did the said lad, in this defendant's hearing, (or so far as deponent knows,) ever say he would not go with deponent and said Carnobeli, unless he could first see his uncle; nor did deponent ever re-

Hernandez, &c., agt. Carnobeli.

ply, that he should not; nor did he hear Carnobeli say so; nor did the said lad, to any such response, say, that he would not go at all; nor did this deponent (nor, so far as deponent knows, did the said Carnobeli) tell him, that if he would go, or come, to New-York, they would (or that deponent would) let him see his uncle. And this deponent utterly denies that his manner towards the said lad was ever threatening, in conversation or otherwise; in fact, he held no conversation with him, save the little that is before mentioned.

And deponent made no insisting about the lad's going without his own consent; nor was there anything threatening on the part of Carnobeli, so far as deponent saw or believes; and the lad appeared a free agent, from the first to the last that deponent saw of him.

And deponent further says, that he is, as he believes, made a defendant in this action—(United States' Court.) Also, he says he is a subject of Spain, and has never become a citizen of the United States; also, that the said plaintiff, Francis Elias Hernandez, is a subject of Spain, as is his father; nor have either of them, so far as this deponent knows, has been informed and believes, become, nor are they either of them citizens of the United States of America. Also, deponent saith that the said Carnobeli did not act as, and was not the agent, or servant, or in any way in the employ of this deponent, or under his control, or in his pay, directly or indirectly, in any of the matters embraced by this deposition.

The affidavit of *Cristoval Carnobeli* stated, that he is now in close confinement in Eldridge-street jail, New-York, in this action, (U. S. Court,) and there held in the sum of $2,000, for want of bail. That he is a subject of Spain; a resident of the island of Cuba; has been in the United States less than a month; and was never here before. That he is a shoe-maker by trade, was formerly a common soldier, but was not so at the time of his coming to the United States—he having served out his time; that he is not, nor was he at the time he quitted Cuba, in the employ of Spain, or of any of the government authorities in Cuba; nor their agent; nor in their employ or pay,

That a considerable time ago, deponent became acquainted with Francisco Hernandez, at Baracoa, Cuba, through his curing deponent of a sickness; and his attention and kindness to deponent was such, in relation to such sickness, that deponent became grateful and attentive, which won the kindness and confidence of the said Francisco Hernandez. That in January last, this deponent being in Havana, and the said Francisco Hernandez knowing of it, the latter sent for deponent; and on ·their meeting, the said Francisco Hernandez urged and implored deponent to come to the United States for his son Francisco Elias Hernandez, who knew, and was known to deponent, and bring him to him in Havana; and that deponent agreed to come; and the father handed him money for that purpose; and wrote and delivered to this deponent a letter to his son, and another to the Spanish consul in New-York; and also entrusted him with two letters, from the mother at Baracoa to the father in Havana, which showed a deep anxiety to have the son back; and also the father handed deponent his own (photographic) portrait to show the son, with a few words at the back written by the father.

And deponent came to the United States, with all these documents and matters, for the parents of their said son only, and not for or on behalf of the authorities of Cuba, or any of them; nor in their pay. That deponent speaks no English, and only understands his native language, Spanish. That on his arrival in New-York, he found his way to the Spanish consulate, and delivered to Francis Stoughton, Esq., the consul, the letter for him sent by the father; and the consul kindly agreed to accompany deponent up to Claverack, where the said son was at school; that they went together, and at the said school the said son, Francisco E. Hernandez, on recognizing deponent, shook hands with him; and on telling him that he came to take him to Cuba, (which was before deponent had shown the aforesaid letters,) the lad said he should first like to see his uncle; but on being shown, and on reading the father's and mother's letters, and seeing the portrait, he appeared to be convinced that he ought not to require it. That deponent and

the lad rode back together in the cars to New-York, and he appeared quite satisfied to go; their conversation together was in regard to the lad's family, that he took him to his boarding house, where they had one room with separate beds; and deponent in no way checked or coerced him at any time. That before going on board of the vessel, deponent gave him $4, to go out with and get himself fruits or other little matters for the voyage; and deponent did not watch or follow him then or at any time—and he went out alone. That they walked openly together in the streets, and went in that way to the consulate for passports; also went on foot from the hotel to the vessel, which was to have taken them to Cuba. On going on board, deponent observed several Cubans, and among them was the uncle of the lad, who appeared greatly excited; and his manner evidently affected the lad; and the uncle asked him whether he desired to go to Cuba, when the lad replied his father had sent for him. The lad was evidently affected by the manner of the uncle, and at last cried, and said he would do what his uncle thought proper; and the Cubans urged the uncle to take him away. And thereupon this deponent told the uncle he had been sent by the father to take the lad to Cuba; whereupon the uncle abused deponent by calling him an infamous man, and saying he had been sold to the Spanish government, all which is utterly false; and also said he was too insignificant a person, and had nothing to do with the matter; and said uncle thereupon took the lad ashore, and away. And deponent in no way used any force or threats to stop him or the lad; nor did this deponent ever compel, or proceed to compel, the said lad, against his will, to go to Cuba.

And this deponent further saith, that the following are the contents of the father's said letter to the said son:—

"HAVANA, 23 January, 1855.

"MY DEAR SON,—Under date of 28th of November last, I wrote to you by means of the Spanish consul there, and on the 9th of December he answered, that you were not in New-York, as the family had gone to Orleans. Then I wrote you

again, addressing the letter to the consul in said Orleans; and
that one has answered that you were not there.   I have just
received a letter from your mother, who enclosed one from you,
dated thus : ' *Claverack Institute*, 28*th November :*' and you say,
in addition, that this college is 36 leagues from New-York;
and, lastly, you say, that when writing to you, the letters should
be addressed thus: 'F. E. Hernandez, Brooklyn, President-
street, No. 91, New-York.'   From this I believe that the con-
sul was deceived when told that you had gone away, it not
being true : and the letter addressed to your mother, of which
I send you the original, for your own satisfaction, proves this.
For this reason I have determined to send the bearer of the
present communication for you—which person is my friend and
yours, whom you know; and he is that artillery shoe-maker
who was in Baracoa, and who, when you were in the fort, was
also there.  · He is called Cristoval Carabeli.   This friend goes
to see and bring you, being thus commissioned by me. . I am
obliged, my son, to make these great expenses, notwithstand-
ing my poverty, because I find it necessary that you should
come here as much to oblige me as for your own sake : for
which reasons I, as your father, command you to come imme-
diately—making your arrangements with Carnobeli, to come
with him without loss of time.   And, putting aside the power
which I possess as a father, I beg it as a friend; for, should
you not do so, you will ruin me forever, as also your mother
and family.   Bear in mind that this letter is not to be seen by
any one, as it is not desirable that any should read it except
yourself, Carnobeli, and the Spanish consul, to whom you are
recommended.   Beware, Franky, lest you are discovered; as
it is very likely, then, that your uncle and his family will pre-
vent your departure.   You must leave without being found out.
If you can but get a change of clothing, well; but if not, you
will come with what you have on, and no more.   You are no
fool—no child, to be discovered.   Do not hesitate or fear, my
son; as your return to your papa is as much for your own wel-
fare as for mine.   I warn you once more, not to be discovered;
and much less by your uncle and his family.   When you are

about leaving, do it with the greatest secrecy; *so that no one shall see you, for this is necessary.* Should you be discovered by chance, you will declare your wish to come to Havana, as your father has said that he requires you, and that you are bound to obey him, so as to relieve him of his anxiety. Mark well, Franky, that I expect you without fail. Carnobeli is well informed of my affairs, and will tell you as to your coming, and what you must do. Should you find yourself, by chance, in need of anything, then present yourself to the consul, as that gentleman has request from me to that effect. My only wish is to see you at my side. In the meantime, receive your father's blessing.

[Signed] FRANCISCO HERNANDEZ."

And in a *postscript* to the said letter, is the following :—

" Should you need anything, tell Carnobeli, or the consul, as I write to the latter on the subject, to give you whatever you wish, although Carnobeli has money. I enclose you the letters which I have received from your mother, for you to see them; also yours, as she has sent it on for me to know where you were. I also send my likeness, for your own satisfaction, and so that you may not fear to come on. Your father expects you without fail, and sends you his blessing.

[Signed] FRANCISCO."

" P. S. Should you be discovered, and they should prevent your coming, run away, as your father requires you, and wishes you here."

Also this deponent says, that in coming to New-York, the said Dr. Francisco Hernandez gave some written instructions, written by himself, in relation to presenting his letter at the consulate, and as to finding the way up to Claverack, and embarking speedily, and in such directions are the following:

" When you find the boy, you will give him my letter, but without any one seeing you do so, or hearing your conversa-

tion.   Should there be no sailing vessel, he will go in the first steamer.   I recommend to you, friend Carnobeli, much care and discretion; and I beg, that when you come, you will bring back my son, with the help of God.   Your affectionate friend,
FRANCISCO HERNANDEZ.   January 22d, 1855."

And this deponent denies that he, or Mr. Stoughton, told the lad, at Claverack, (or any where,) that if he did not go to Cuba he would be put in prison, and very badly treated, nor anything to that effect; nor did either of them tell him he should not write to his uncle; nor did he say to them, or to this deponent, that he would not go with them unless he could first see his uncle; nor did they say, that if he would come to New-York they would let him see his uncle.   And he denies that his manner, or that of the said consul, was ever threatening, in conversation or otherwise, towards the said lad; that deponent's manner was invariably kind to him; and as for the consul, his deportment towards the boy was most kind and parental in manner, and he in no way coerced him.

And deponent says, that besides the present action (U. S. Court) against him, the same plaintiff, by the same next friend, has commenced a similar action against him for alleged assault and battery, and false imprisonment, in the superior court of the city of New-York, and got an order to hold him to bail in $1,000, and a detainer to that effect is lodged against him with the jailer of Eldridge-street prison.

And deponent saith that he is a stranger in New-York, has no property, relations, or friends, in the United States, and is utterly unable to give bail, as required in this and the other action, or either of them.   Also this deponent says, that the following are the contents of the son's letters to the father, which deponent brought with him to show the son:—

[Here follows the letter at length, which contains, principally, requests for letters from home, and success in his studies, and nothing material to the present motion.]

Also this deponent saith, that he was not the agent, or servant, or in any way in the employ of Francisco Stoughton, Esq.,

Hernandez, &c., agt. Carnobeli.

nor did he act as such in any of the matters embraced by this action; nor in his pay, directly or indirectly, for these or any other purposes. And this deponent denies that he, in the presence of Mr. Stoughton, or at any time, said that Mr. Stoughton would not have come up to Claverack about this matter, if he had not received an order from the captain general of Cuba, directing him to do so; nor did he ever say anything to him to that effect; and he is utterly ignorant as to whether Mr. Stoughton ever had or received any such order.

*Charles Chacon,* of Jersey City, made an affidavit, that he can translate Spanish into English, and English into Spanish; that he truthfully translated, and read in Spanish to Cristoval Carnobeli, his above affidavit, before it was signed and sworn to: also, that the contents of the original letters, therein set forth, have been examined with the originals by deponent, and the same are correctly translated.

An affidavit of *Bernardine Serveria,* of No. 154 Chambers-street, New-York, son of Juan B. Serveria, hotel keeper, corroborated the statement of Cristoval Carnobeli, in reference to staying at the hotel with the lad; and that the lad appeared perfectly free, and went where he desired to, without any apparent constraint or coercion. Deponent accompanied them to the vessel to start for Cuba; and corroborated the said statements respecting the rescue of the plaintiff.

The affidavits, on the part of the defendant, used on this motion, were entitled in an action in the United States' Court, wherein Francis Stoughton, the consul, was made defendant with said Cristoval Carnobeli, at the suit of the plaintiff, for a like action of assault and battery, and false imprisonment. And the defendants' affidavits were made for a motion to discharge from arrest in the latter action,—the facts being the same in each case.

CHARLES EDWARDS, *for defendant.*
THEODORE SEDGWICK, *for plaintiff.*

HOFFMAN, Justice. The defendant has been sued in an action stated to be for false imprisonment, or assault and battery.

The complaint is not yet filed; but the case presented on the affidavits shows that such must be the cause of action; and the counsel of the plaintiff states that the action is for the former cause.

There are two points raised in the case, as now before me.

1st. It appears that an action was commenced in the district court of the United States against the present defendant, with Francis Stoughton, the Spanish consul, in which the defendant was held to bail in the sum of $2,000, and the order to hold to bail, endorsed on the *capias* by Judge BETTS, is dated the 8th of February, 1855. The affidavits on which that order was founded state precisely the same facts, and supply identically the same cause of action as those in the present suit. The arrest in the suit in the district court took place on the 8th of February.

On the 9th of February, on affidavits sworn to on that day, the order of arrest was made in this action, and a detainer was lodged with the keeper of the Eldridge-street jail, in which he was a prisoner. Thus I understand the affidavits. At any rate, it is not contested that he is under process of arrest, and required to give bail in these two suits.

The action in the district court is admitted to have been commenced because of the want of jurisdiction in any state court over the Spanish consul; and Carnobeli, the defendant here, is made a party there, on the supposition that the jurisdiction over the consul may carry with it jurisdiction over others, otherwise not amenable to it. The language of Judge RUGGLES, in delivering the opinion of the court in *Valarino* agt. *Thompson*, (3 *Selden*, 582,) supports this fully in cases of a joint contract. Perhaps there is no ground for a distinction in actions for *torts*.

But, without attempting to decide this point, there was no necessity for the plaintiff making the present defendant a party to the suit in the district court. He could sue Stoughton as a trespasser, or join the defendant as he might be advised. (*Chitty on Pleadings, Vol.* 1, *p.* 81, *and cases.*) Even then, if a plea of absolute necessity of joining him in that court could

avail to justify a double arrest, that plea is not founded in fact or law.

But the idea is to me totally inadmissible, that, under any difficulty of proceeding, or upon any ground, this defendant can be twice arrested, by process out of different courts in the same state, for the same cause of action.

A number of cases upon this subject are collected in *Petersdorf on Bail*, 131, 139. (*Law Library, Vol.* 10, *p.* 73.) *See also Peck* agt. *Hozier*, (14 *John. Rep.* 346.)

The question, then, is, whether the defendant, having been last arrested by process from this court, is not entitled to an absolute discharge, solely on this ground. But as the plaintiff might perhaps be entitled to an election, I have proceeded to consider the case on the merits of the application.

A better practice, however, is to reduce the bail to a mere nominal amount, similar to the discharge on filing common bail under the former system. (*Carter* agt. *Hunt*, 1 *Chit. R.* 246.)

The Code now permits the partial trial of a cause upon a motion to discharge an arrest. The 204th and 205th sections have introduced this new principle in the law of bail, or extended and recognized a rule which, to a limited extent, prevailed in the court of common pleas in England. (*Petersdorf on Bail*, 194.) The court of appeals has interpreted the Code to admit of such a partial trial with the view to the vacating the arrest. (*Corwin* agt. *Freeland*, 2 *Selden*, 565.) I have before stated the principle upon which it appears to me the court is to act in such a case. That is, that the inquiry is to be, whether, upon the whole case as presented, a verdict ought to be given by a jury, or a judgment by a single judge, for the plaintiff or defendant. If the questions are doubtful, then the plaintiff has not made out his case, and the defendant should be discharged. It is in this particular that I differ from some able judges, who incline to hold that the defendant is to make out clearly that the plaintiff cannot succeed. I have observed, in other cases, that the principle of the Code is very similar to the doctrine of a court of equity, upon a motion to dissolve an injunction, or discharge a *ne exeat*, when the question of the

cause of action is for such purposes examined and determined; although the cause proceeds, and the actual proofs may change the results entirely.

In testing the present case by these principles, it appears to me, the plaintiff has not, as now exhibited, made out a cause of action. The extent to which the case made by him can be carried, is, that the father of the plantiff was induced, by the promise of the Cuban authorities to liberate him, or the threat to continue his imprisonment, to direct his son to return; and for that purpose to commission the defendant to bring him from the United States. The fact of a full and entire authority, in form and language, given by the father to accomplish this purpose, cannot be denied. The letter to the Spanish consul of the 23d of January, that to the son of the same date, as well as the written instructions to the defendant, are explicit and decided. The defendant, then, standing in the place of the parent, uses the very means which the parent directs, of haste and concealment, to accomplish his purpose. He uses no undue force or personal violence. The conduct of the son may well be accounted for in his wish to obey his father on the one side, and a reluctance to leave his associates, and the freedom of his situation, for a land which could not but be distasteful to him. I am happy that I am not called to interfere with this freedom of choice; but to hold that this agent and substitute of the father is subject to an action of assault and battery, or false imprisonment, for seeking to accomplish the wish and command of the father, even if essential to his own redemption from prison, seems to me totally unwarrantable.

The defendant must be discharged from the arrest, and the order vacated in this case.